**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHANOCH SHREIBER, SCOTT D. LEFKOWITZ, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SYNACOR, INC., HIMESH BHISE, and WILLIAM J. STUART,<br><br>Defendants. | **Case No. 18-cv-02979 (LGS)**<br><br>**CLASS ACTION AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**<u>CLASS ACTION COMPLAINT</u>**

Lead Plaintiff Chanoch Shreiber and named plaintiff Scott D. Lefkowitz ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Synacor, Inc. ("Synacor" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Synacor securities between May 5, 2016 and March 15, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Synacor operates as a technology development, multiplatform services, and revenue partner for video, Internet, and communications providers, as well as device manufacturers, governments, and enterprises. In 2012, Synacor became a public company. Synacor is headquartered in Buffalo, New York, and its securities trade on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "SYNC".

3. On May 4, 2016 after market-close, Synacor announced that it had secured a three-year contract to host web and mobile services for AT&T Inc. ("AT&T"). The Company's press release announcing the contract stated in relevant part (emphasis added):

**AT&T Awards Synacor Important Portal Services Contract**

May 4, 2016

- *Synacor selected to provide portal services for AT&T customers that drive user engagement*
- ***Expected revenues from the contract are ~$100M per year, after full product deployment in 2017***
- *Early products to deploy in Q2 2016, with broader services slated to commence deployment in Q4 2016*

BUFFALO, N.Y., May 04, 2016 (GLOBE NEWSWIRE) -- Synacor, Inc. (Nasdaq:SYNC), the trusted multiscreen technology and monetization partner for video, internet and communications providers, device manufacturers and enterprises, today announced that AT&T Inc. (NYSE:T), the largest pay TV provider in the United States, has awarded a portal services contract to Synacor.

In partnership with AT&T, Synacor will

- Develop and manage innovative desktop and mobile portal services designed to drive user engagement
- Populate these experiences with rich content sourced from popular brands
- ***Monetize these experiences through search and advertising***

4. AT&T awarded the contract to Synacor in May 2016 after ending a 15-year materially different contract with Yahoo (the "Yahoo Contract"). The deal effectively moved a major chunk of AT&T's business away from Yahoo. One analyst estimated that the Yahoo Contract generated $100 million in annual revenue for Yahoo.

5. When Synacor announced the AT&T news, the Company immediately began making unsupported statements that Synacor would generate similar revenues from its agreement with AT&T. Defendants effectively told investors that Yahoo's loss of $100 million annually was Synacor's gain. Defendants stated that they estimated annual revenues associated with the contract to be $100 million per year after full deployment in 2017, and that the $100 million in revenue would be a critical element of Synacor's target of $300 million in revenue in 2019. This was quite significant given that the Company's overall revenue was in the low $100 million range at that time.

6. Throughout the Class Period, Defendants made similar statements regarding revenue forecasts. Such statements, however, were false or misleading because Defendants knew there was no reasonable basis for making the statements. The statements were based entirely on AT&T portal's previous year's revenue when hosted by Yahoo, as opposed to any real analysis prepared by or on behalf of Synacor. There was no basis to assume that the AT&T contract with Synacor, which was a materially different contract than the Yahoo Contract, had the same value – $100 million annually – as the Yahoo Contract. Synacor's portal for AT&T had no track record of performance or customer receptivity, much less revenue generation.

Moreover, the Company assumed, again without any basis, that upon deployment, AT&T would immediately monetize the portal. In fact, AT&T had made no such commitment. Furthermore, because the $100 million in revenue was a critical element of Synacor's $300 million 2019 target, there was no reasonable basis for that figure as well. The Company should not have given any revenue estimates associated with the contract. Rather, it should just have announced that it won the contract.

7. News that Synacor won a contract with such favorable revenue estimates pushed the stock through the roof. Investors were brimming with excitement that this small, little-known company in Buffalo, New York had won an AT&T contract which generated enormous amounts of revenue for Yahoo and would do the same for Synacor.

8. Defendants continued to string along investors for quite some time with rosy revenue forecasts. Synacor's message was clear: We continue to make excellent progress toward the launch and deployment in 2017 of the AT&T portal, and the Company is consistently on track of meeting its revenue goals. No problems here investors, move along! However, to this date, the expected revenues have not materialized. While the portal was launched and deployed in 2017, only 25% of the estimated $100 million in revenue was generated that year. AT&T has appropriately chosen to focus on consumer experience and engagement by its customers rather than monetizing the portal through search and advertising.

9. Synacor's internal control over financial reporting was also woefully inadequate. In each of the annual and quarterly reports filed during the Class Period, Defendants Bhise and Stuart, the Chief Executive Officer and Chief Financial Officer, respectfully, executed certifications pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 ("SOX"), certifying that they are directly responsible for the accuracy, documentation, and submission of all financial

reports, as well as the internal control structure of the registrant; that they have established and maintained adequate internal controls for public disclosure, that the financial statements are accurate, that they comply with the requirements of the Exchange Act, that the information is fairly presented, and that they have disclosed any fraud and all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting to the registrant's auditors. But investors would later learn that Defendants' SOX 302 certifications were false and that Synacor's internal control over financial reporting was materially deficient causing the Company to be incapable of producing accurate financial statements.

10. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (a) that there was no reasonable basis for Synacor to assume that it would generate similar revenues of approximately $100 million from its agreement with AT&T as Yahoo did with its agreement with AT&T; (b) that there was no reasonable basis for Synacor to assume that it would generate $300 million in annual revenue by 2019; (c) that Synacor was unlikely to receive significant revenues from its contract with AT&T until 2018; (d) as such, the Company's revenue forecasts issued during the Class Period were materially false and misleading; and (e) Synacor's internal control over financial reporting was materially deficient causing the Company to be incapable of producing accurate financial statements.

11. During the 2017 second quarter earnings conference call held on August 9, 2017, Defendant Bhise stated in relevant part (emphasis added): ***"At this time, the joint AT&T Synacor team has decided to prioritize engagement over monetization and so we now anticipate that much of the ramp up in revenue that we were expecting in the second half of***

***’17 would get delayed to 2018. The AT&T and Synacor joint team made the strategic decision to prioritize engagement right now over monetization…. As a result, a significant portion of the revenue that we were expecting in Q3 and Q4 this year is delayed to 2018…. Given the focus on engagement and the delay on full monetization in the AT&T portal to 2018, we are revising our 2017 financial guidance.”*** Defendants issued similar disclosures in an August 9, 2017 post-market press release announcing the Company’s financial results for the quarter ended June 30, 2017.

12. On this news, Synacor’s share price fell $1.15, or 32.39%, to close at $2.40 on August 10, 2017.

13. On March 15, 2018, post-market, Synacor held an earnings conference call with analysts and investors to discuss the Company’s fourth-quarter earnings. During the call, Defendant Bhise discussed the shortcomings of the AT&T contract, stating in relevant part (emphasis added): “AT&T has chosen, at least for the near term, to prioritize consumer experience and engagement…. Given this focus, ***in the last three quarters of 2017, we generated approximately $25 million in revenue from AT&T***. ***We are expecting that AT&T will continue to focus on consumer experience, and as such, our 2018 guidance reflects the annualized 2017 run rate. Clearly, this forecast is below the $100 million annual revenue target that AT&T and Synacor announced when we first discussed the portal contract and was a critical element of Synacor's $300 million 2019 target.”***

14. During the call, Defendant Stuart also disclosed material weaknesses in the Company’s internal controls over financial reporting. He stated that the Company ***“will report in our Form 10-K three material weaknesses in our internal controls over financial reporting.***

***We believe all three resulted from having initially assigned too few people with the necessary expertise to adequately document, implement and monitor controls.*** (Emphasis added)

15. There can be no doubt that the three material weaknesses identified above existed when Defendants Bhise and Stuart signed SOX 302 certifications with respect to each quarterly and annual report filed with the SEC during the Class Period. At all times, they were well aware that the Company was understaffed, particularly lacking experienced and knowledgeable personnel in the internal controls area. Bhise, who joined the Company in 2014, cut 50 jobs in Buffalo in an effort to trim costs, which was roughly a 20% percent staff reduction. Although the Company hired additional personnel for purposes of the AT&T contract, it failed to adequately staff the Finance Department or bring in outside reinforcements to assist the internal team when necessary.

16. The material weaknesses described above should have given Bhise and Stuart pause when it came time to sign each SOX certification. Nevertheless, they signed each one knowing that internal control over financial reporting was lacking. Because Synacor's internal control over financial reporting was woefully inadequate as described above, the Company was incapable of producing accurate financial statements.

17. On this news in ¶¶ 13-14, Synacor's share price fell $0.30, or 14.63%, to close at $1.75 on March 16, 2018.

18. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

19. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

21. Venue is proper in this Judicial District pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Synacor's securities trade on the NASDAQ, located within this Judicial District.

22. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

23. Lead Plaintiff Chanoch Shreiber acquired Synacor securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

24. Named Plaintiff Scott D. Lefkowitz acquired Synacor securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

25. Defendant Synacor is incorporated in Delaware, with principal executive offices located at 40 La Riviere Drive, Suite 300, Buffalo, New York 14202. Synacor's securities trade on the NASDAQ under the ticker symbol "SYNC."

26. Defendant Himesh Bhise ("Bhise") has served as the Company's Chief Executive Officer, President and Board member since August 4, 2014.

27. Defendant William J. Stuart ("Stuart") has served as the Company's Chief Financial Officer since September 15, 2011.

28. The Defendants referenced above in ¶¶ 26-27 are sometimes referred to herein as the "Individual Defendants."

29. The Individual Defendants possessed the power and authority to control the contents of Synacor's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be false and/or misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

30. Synacor operates as a technology development, multiplatform services, and revenue partner for video, internet, and communications providers, as well as device manufacturers, governments, and enterprises.

31. It enables customers to use technology platforms and services to scale businesses and extend subscriber relationships. Its products include managed portals, advertising solutions, email and collaboration platforms, and cloud-based identity management.

32. The Company was founded in 1988 and went public in 2012 in a low-quality IPO at $5 having unsuccessfully attempted to price between $10-12.

33. The Company is headquartered in Buffalo, New York. Since going public, Synacor has lost money year after year.

**Synacor Tells Investors It Won A Game-Changing Contract With AT&T**

34. AT&T had a 15-year contract with Yahoo that was signed in 2001 giving Yahoo the rights to host AT&T's website and applications. Some had valued the Yahoo Contract as bringing in an estimated $100 million annually in revenue for Yahoo. As explained below, when Synacor announced in May 2016 that AT&T awarded a contract to the Company, it immediately began making unsupported statements that Synacor would generate similar revenues from its agreement with AT&T. Defendants effectively told investors that Yahoo's loss of $100 million annually was Synacor's gain. This was quite significant given that the Company's overall revenue was in the low $100 million range at that time.

35. Because this was badly needed revenue for Synacor, the contract gave the Company a new lease on life. It was thought that the contract would solidify Synacor's shaky financial footing after three years of stagnancy and losses.

**Synacor Announces the AT&T Contract**

36. After market-close on May 4, 2016, Synacor dropped big, big news. It issued a press release entitled "AT&T Awards Synacor Important Portal Services Contract," announcing a partnership with AT&T. The press release stated in relevant part (emphasis added):

> - *Synacor selected to provide portal services for AT&T customers that drive user engagement*
> - ***Expected revenues from the contract are ~$100M per year, after full product deployment in 2017***
> - *Early products to deploy in Q2 2016, with broader services slated to commence deployment in Q4 2016*
>
> BUFFALO – May 4, 2016 – Synacor, Inc. (Nasdaq:SYNC), the trusted multiscreen technology and monetization partner for video, internet and communications providers, device manufacturers and enterprises, today announced that AT&T Inc. (NYSE:T), the largest pay TV provider in the United States, has awarded a portal services contract to Synacor.
>
> In partnership with AT&T, Synacor will
>
> - Develop and manage innovative desktop and mobile portal services designed to drive user engagement
> - Populate these experiences with rich content sourced from popular brands
> - ***Monetize these experiences through search and advertising***
>
> "We are honored to have been selected from among the contenders AT&T considered in their evaluation process," said Synacor CEO Himesh Bhise. "We are thrilled that AT&T will be using our managed portal services, mobile apps, and advertising solutions in this important initiative to deepen engagement with their customers. We already are developing initial products for deployment in 2016, and have started working on a next-gen product for 2017."

**The Yahoo Contract Generated $100M for Yahoo**

37. On May 4, 2016, *The Wall Street Journal* published an article entitled: "AT&T Unwinds 15-Year Web Alliance With Yahoo; Companies had split ad revenue from AT&T site". The article stated (emphasis added):

> AT&T is unwinding a 15-year partnership with Yahoo Inc. that has spanned the evolution of the Internet….
>
> AT&T said Wednesday that it has awarded the contract to host its Web and mobile portals to Synacor Inc., a company little-known outside of telecom circles. The deal effectively moves a major chunk of AT&T's business away from Yahoo.
>
> "We have agreed to have Synacor manage our next-generation att.net portal, AT&T-branded applications, and search," AT&T said in a statement. Yahoo will continue to host email for AT&T customers, though a person familiar with the deal said that is a fraction of its prior business with the telecom giant.

***

***Sameet Sinha, an analyst at B. Riley & Co., estimates the AT&T partnership generated about $100 million in annual revenue for Yahoo.***

***

***Synacor Chief Executive Himesh Bhise said the deal will bring in an additional $100 million a year for the company once it has fully deployed its services for AT&T over the next 12 months.***

38. The reference to Yahoo's loss of "$100 million in annual revenue" was also mentioned in a number of articles the next day. For example, on May 5, 2016, *Investor's Business Daily* published an article entitled "Yahoo Stock Up Despite Loss of AT&T Contract; Verizon Near?" The article stated: "Yahoo (YHOO) stock rose early Thursday, despite the loss of an AT&T (T) contract one analyst valued at $100 million in revenue." *Vanity Fair* also published an article on May 5, 2016 entitled "YAHOO JUST LOST A DEAL WORTH $100 MILLION A YEAR". The article stated that the Yahoo Contract "brought in an estimated $100 million annually, nearly all of it profit."

39. On May 5, 2016, Synacor held a conference call for investors. Defendant Bhise stated (emphasis added): ***"We estimate the revenues associated with [the AT&T] partnership to be ~ $100M per year, after we fully deploy our products and migrate AT&T customers. This deployment is targeted for 2017." "[W]e are announcing today our new three-year goal for the company. We are calling this our 'Path to 3/30/300': In 3 years (that is 2019), we will generate $30M of EBITDA, on annual revenues of $300M. This is now our new path."***

40. Additionally, the Company had a written presentation for the March 5, 2016 conference call entitled "SYNACOR…DRIVING GROWTH IN ATTRACTIVE DIGITAL MARKETS[,] AT&T SELECTS SYNACOR TO ENABLE PORTAL SERVICES[,] MAY 5,

2016". The presentation stated that Synacor's contract with AT&T had a current *"**[v]alue of ~ $100M per year upon full deployment**"*; and put the Company on a path to *"**GENERAT[E] $300M IN REVENUES AND $30M IN EBITDA IN 3 YEARS**"*. May 5, 2016 Presentation, at 7, 9-10 (emphasis added) (the "May 5, 2016 Presentation").

41. The Defendants statements regarding revenue forecasts were false or misleading because Defendants knew there was no reasonable basis for making the statements. The statements were based entirely on the portal's previous year's revenue when hosted by Yahoo, as opposed to any real analysis prepared by or on behalf of Synacor. There was no basis to assume that the AT&T contract with Synacor, which was a materially different contract than the Yahoo Contract, had the same value – $100 million annually – as the Yahoo Contract. Synacor's portal for AT&T had no track record of performance or customer receptivity, much less revenue generation. Moreover, the Company assumed, again without any basis, that upon deployment, AT&T would immediately monetize the portal. In fact, AT&T had made no such commitment. Furthermore, because the $100 million in revenue was a critical element of Synacor's $300 million 2019 target, there was no reasonable basis for that figure as well. The Company should not have given any revenue estimates associated with the contract. Rather, it should just have announced that it won the AT&T contract.

42. Confidential Witness ("CW") 1, the former Director of Product at Synacor from May 2016 to September 2016, stated that the Company's public announcements regarding revenue from the AT&T contract were based on the previous year's revenue for the portal when hosted by Yahoo. CW1 stated that the revenue announcements by the Company were not realistic and CW1 tried to tell people that from the time CW1 arrived at Synacor until the time CW1 left the Company. CW1 stated that Synacor was not simply porting AT&T's current

portal. Synacor was making fundamental changes to the portal that could cause users to drop the platform, something that CW1 said must be expected during a project of this magnitude. "Any time you re-platform a website like that, and anyone who works on tech products knows this, [you lose some users]." "You can't assume revenue through the redesign will be the same." CW1 believes that CW1 was terminated because of CW1's insistence that the revenue numbers were not realistic.

**Synacor's Shares Explode As A Result of Defendants' Statements**

43. News that Synacor won this enormous contract, valued at approximately $100 million per year in revenue upon full deployment in 2017 and approximately $300 million in revenue per year by 2019, pushed the stock through the roof. Investors were brimming with excitement that this small, little-known company in Buffalo, New York had won an AT&T contract that generated enormous amounts of revenue for Yahoo and would do the same for Synacor.

44. On March 4, 2016, *MarketWatch* reported that "Synacor Inc. shares skyrocketed in the extended session Wednesday after AT&T awarded the video and Internet tech company a portal services contract that could bring in about $100 million a year in revenue beginning in 2017. Synacor shares jumped 130% to $3.25 after hours on heavy volume."

45. *Buffalo Business First* also reported on May 4, 2016, updated May 5, 2016, that:

> Synacor Inc. has scored a major contract from AT&T that will dramatically change the size and scope of the company, nearly doubling its annual revenues to about $217 million by 2017, according to company expectations. The three-year contract means that Synacor will host web and mobile services for the telecommunications giant. It is expected to be worth a total of $300 million in revenue to Synacor….
>
> Synacor … has endured lagging share prices, layoffs, the loss of major clients and a challenge by activist investors since it went public in 2012.

> The company hired a new chief executive office in the summer of 2014 and has been working to revamp its product offerings with the goal of bringing in more clients. It has announced several major acquisitions since that time as well.
>
> But the move hadn't excited investors until the ATT&T news broke today, sending stock surging upward from $1.41 to $3.22 in a matter of minutes.

46. On May 5, 2016, *Multichannel News* published an article entitled "Synacor Shares Rocket 158%, Stock has banner day after Synacor AT&T deal." The article stated: "Synacor shares closed up 158% to $3.64 each, Thursday, *the day after* the company announced a mobile and Web portal services contract with AT&T that will be worth about $100 million a year when it's fully deployed by sometime in 2017…. Synacor announced a new initiative it's calling '3/30/300,' with a goal of generating $300 million in revenues and $30 million in EBITDA in three years… Bhise said the plan is to get to $300 million by adding the $100 million coming way of the AT&T deal alongside growth from other [areas]." (Emphasis added.)

47. Defendants continued to string along investors for quite some time with rosy revenue forecasts. Synacor's message was clear: We continue to make excellent progress toward the launch and deployment in 2017 of the AT&T portal, and the Company is consistently on track of meeting its revenue goals. No problems here investors, move along!

48. But according to CW2 who served as the Accounts Payable Coordinator in the Finance Department from April 2014 to June 2017, it was evident early in 2017 that the search and advertising revenue that Synacor had expected to earn through the AT&T portal was taking longer than expected to materialize. By June 2017, the Company was becoming even more concerned about the lower than expected search and advertising revenue. It was clear that the projected search and advertising revenue that the Defendants had touted was not materializing and it was unclear when or if it would materialize.

49. To this date, the expected revenues never materialized, and management credibility is all but gone. While the portal was launched and deployed in 2017, only 25% of the estimated $100 million in revenue was generated that year. AT&T has appropriately chosen to focus on consumer experience and engagement by its customers rather than monetizing the portal through search and advertising. Investors have now come to realize that Defendants have misled them.

**Synacor's Internal Control Over Financial Reporting Was Woefully Inadequate**

50. As a result of the passage of SOX, any quarterly or annual report filed by a public company with the SEC must include the personal certification of the CEO and CFO under SOX 302. The CEO and CFO certify that they are directly responsible for the accuracy, documentation, and submission of all financial reports, as well as for the internal control structure of the registrant. They certify that they have established and maintained adequate internal controls for public disclosure, and that the financial statements are accurate, that they comply with the requirements of the Exchange Act, that the information is fairly presented, and that they have disclosed any fraud and all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting to the registrant's auditors.

51. One of the purposes of Section 302 is to ensure that a public company's CEO and CFO take a proactive role in the company's public disclosure. Another purpose of Section 302 is to give investors more confidence that a company's SEC periodic reports are accurate and reliable.

52. In each of the annual and quarterly reports filed during the Class Period, Bhise and Stuart executed Section 302 certifications.

53. During the fourth quarter 2017 earnings conference call held on March 15, 2018, Defendant Stuart disclosed material weaknesses in the Company's internal controls over financial reporting. He stated (emphasis added):

> As 2017 was our fifth full year as a public company, we were required for the first time to obtain an independent audit of our internal controls over financial reporting under Section 404 of Sarbanes-Oxley as of December 31, 2017. ***As a result of this audit, we will report in our Form 10-K three material weaknesses in our internal controls over financial reporting. We believe all three resulted from having initially assigned too few people with the necessary expertise to adequately document, implement and monitor controls.***

54. Deloitte & Touche LLP's ("D&T") March 16, 2018 Report on Synacor's Financial Statements "expressed an adverse opinion on the Company's internal control over financial reporting because of material weaknesses." D&T's Opinion on Internal Control over Financial Reporting stated that ***the Company has not maintained effective internal control over financial reporting as of December 31, 2017*** (emphasis added). It also stated (emphasis added):

> **Material Weaknesses**
>
> A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's annual or interim financial statements will not be prevented or detected on a timely basis. ***The following material weaknesses have been identified and included in management's assessment: (i) ineffective control environment due to a lack of sufficient qualified personnel with an appropriate level of knowledge and experience with generally accepted accounting principles, (ii) ineffective control activities due to the lack of timeliness in executing business process controls, and (iii) ineffective monitoring controls to ascertain whether the components of internal control were present and functioning.***

55. There can be no doubt that the three material weaknesses identified above existed when Defendants Bhise and Stuart executed each SOX 302 certification.

56. At all times, Defendants were well aware that the Company was understaffed, particularly lacking experienced and knowledgeable personnel in the internal controls area. Bhise, who joined the Company in 2014, cut 50 jobs in Buffalo in an effort to trim costs, which

was roughly a 20% percent staff reduction. *See* David Robinson, "Synacor lands $100 million annual contract from AT&T", *The Buffalo News*, May 5, 2016. Although the Company hired additional personnel for purposes of the AT&T contract, it failed to adequately staff the Finance Department or bring in outside reinforcements to assist the internal team when necessary.

57. According to CW2 who, as stated above, served as the Accounts Payable Coordinator in the Finance Department from April 2014 to June 2017, "[t]urnover was terrible." By the time CW2 left the Company, CW2 had had four different managers and "was the longest standing person in the [Finance] Department." Many of CW2's colleagues had defected in the last year. CW2 stated that accounting personnel were viewed as second-class citizens at the Company and not treated particularly well. Additionally, CW2 believed that Defendant Stuart, the CFO, "had no idea what was going on, and financial oversight was poor."

58. The material weaknesses described above should have given Bhise and Stuart pause when it came time to sign each SOX certification. Nevertheless, they signed each one knowing that internal control over financial reporting was lacking.

59. Because Synacor's internal control over financial reporting was woefully inadequate as described above, the Company was incapable of producing accurate financial statements.

## <u>Materially False and Misleading Statements Issued During the Class Period</u>

### During the Second Quarter of 2016 (April 1, 2016-June 30, 2016)

60. On May 4, 2016 post market-close, Synacor issued a press release, attached as Exhibit 99.1 to Form 8-K filed with the SEC, entitled "AT&T Awards Synacor Important Portal Services Contract," announcing a partnership with AT&T. The press release stated in relevant part (emphasis added):

- *Synacor selected to provide portal services for AT&T customers that drive user engagement*
- ***Expected revenues from the contract are ~$100M per year, after full product deployment in 2017***
- *Early products to deploy in Q2 2016, with broader services slated to commence deployment in Q4 2016*

BUFFALO – May 4, 2016 – Synacor, Inc. (Nasdaq:SYNC), the trusted multiscreen technology and monetization partner for video, internet and communications providers, device manufacturers and enterprises, today announced that AT&T Inc. (NYSE:T), the largest pay TV provider in the United States, has awarded a portal services contract to Synacor.

In partnership with AT&T, Synacor will

- Develop and manage innovative desktop and mobile portal services designed to drive user engagement
- Populate these experiences with rich content sourced from popular brands
- Monetize these experiences through search and advertising

"We are honored to have been selected from among the contenders AT&T considered in their evaluation process," said Synacor CEO Himesh Bhise. "We are thrilled that AT&T will be using our managed portal services, mobile apps, and advertising solutions in this important initiative to deepen engagement with their customers. We already are developing initial products for deployment in 2016, and have started working on a next-gen product for 2017."

61. On May 4, 2016, *The Wall Street Journal* published an article entitled: "AT&T Unwinds 15-Year Web Alliance With Yahoo; Companies had split ad revenue from AT&T site". The article stated (emphasis added):

> AT&T is unwinding a 15-year partnership with Yahoo Inc. that has spanned the evolution of the Internet….
>
> AT&T said Wednesday that it has awarded the contract to host its Web and mobile portals to Synacor Inc., a company little-known outside of telecom circles. The deal effectively moves a major chunk of AT&T's business away from Yahoo.
>
> "We have agreed to have Synacor manage our next-generation att.net portal, AT&T-branded applications, and search," AT&T said in a statement. Yahoo will continue to host email for AT&T customers, though a person familiar with the deal said that is a fraction of its prior business with the telecom giant.
>
> ***

Sameet Sinha, an analyst at B. Riley & Co., estimates the AT&T partnership generated about $100 million in annual revenue for Yahoo.

***

***Synacor Chief Executive Himesh Bhise said the deal will bring in an additional $100 million a year for the company once it has fully deployed its services for AT&T over the next 12 months.***

62. On May 5, 2016, Synacor held a conference call for investors. Defendant Bhise stated (emphasis added): ***"We estimate the revenues associated with [the AT&T] partnership to be ~ $100M per year, after we fully deploy our products and migrate AT&T customers. This deployment is targeted for 2017." "[W]e are announcing today our new three-year goal for the company. We are calling this our 'Path to 3/30/300': In 3 years (that is 2019), we will generate $30M of EBITDA, on annual revenues of $300M. This is now our new path."***

63. There was also a written presentation for the May 5, 2016 earning conference call that was posted on the Company's website entitled "SYNACOR…DRIVING GROWTH IN ATTRACTIVE DIGITAL MARKETS[,] AT&T SELECTS SYNACOR TO ENABLE PORTAL SERVICES[,] MAY 5, 2016". Page 8 of the presentation states that the AT&T contract has a current *"**Value of ~ $100M per year upon full deployment**"* (emphasis added).

64. On May 10, 2016, Synacor issued a press release, attached as Exhibit 99.1 to Form 8-K filed with the SEC on May 11, 2016, entitled "Synacor Beats Q1 2016 Guidance, Grows Margins, Wins AT&T Contract, ***Sets $300 Million Revenue Target***," discussing in detail the AT&T Contract (emphasis added). The press release stated in relevant part (emphasis added):

> "We begin 2016 with another successful quarter for Synacor - delivering significant year-over-year growth, expanding margins, and achieving several important milestones," said Synacor CEO Himesh Bhise. "We are honored to have been selected from among the many contenders to provide AT&T with

> portal services. In addition, we continue to make strong progress in adding and renewing customers to our portal, advertising, email, and video platforms."
>
> "In less than two years, Synacor has undergone a massive transformation that has positioned us to compete effectively in several high-growth digital markets. Today, we have an enviable global customer base, a compelling and broad portfolio of products, and an advertising platform at scale. Our new contract win with AT&T is not only validation of our transformation, but is also an indicator and accelerator of our future growth and underpins our confidence to achieve ***our new long-term financial target of $300 million in revenue and $30 million in adjusted EBITDA in 2019***," Bhise continued.
>
> ***Recent Highlights***
>
> - Signed a multi-year portal services agreement with AT&T, which is ***expected to reach approximately $100 million of annual revenues after full product deployment is achieved in 2017***
> - ***Introduced a new "Path to 3/30/300" financial plan targeting annual revenue of $300 million and adjusted EBITDA of $30 million in 2019***

65. During the 2016 first quarter earnings conference call held on May 10, 2016, Defendant Bhise stated (emphasis added):

> We announced our partnership with AT&T, and ***we shared our financial targets of $300 million in revenue, $30 million in EBITDA in 2019…. We estimate the value of this multi-year contract to be approximately $100 million per year, after we fully deploy our products to AT&T customers. This deployment is targeted over 2017***…. We will be investing $10 million over the next 12 months in support of the AT&T partnership…. ***[W]e are targeting annual revenue of $300 million and adjusted EBITDA of $30 million in three years. That is in 2019.*** This represents revenue growth of 30% per year. ***The $300 million revenue target contemplates … the value we expect from AT&T*** [among other things].

66. On May 16, 2016, Synacor filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "1Q 2016 10-Q"). For the quarter, Synacor reported a net loss of $1.57 million, or $0.05 per diluted share, on revenue of $30.26 million, compared to a net loss of $1.07 million, or $0.04 per diluted share, on revenue of $26.73 million for the same period in the prior year.

67. In the 1Q 2016 10-Q, the Company stated in relevant part (emphasis added):

> On May 4, 2016, the Company announced it had entered into a three-year agreement with AT&T Services, Inc. (or "AT&T") to provide Managed Portals and Advertising solutions for use by AT&T's consumers. The Company expects that certain products will be deployed under this contract in the second quarter of 2016, with full deployment expected in early 2017. ***The Company expects that revenue attributable to AT&T will account for a substantial portion of its revenue beginning in 2017***.

68. The 1Q 2016 10-Q contained certifications pursuant to Section 302 of SOX, signed by the Individual Defendants, that stated (emphasis added):

> 1. I have reviewed this Quarterly Report on Form 10-Q [or this Annual Report on Form 10-K] of Synacor, Inc.;
>
> 2. ***Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;***
>
> 3. ***Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report***;
>
> 4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
> > a. Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
> >
> > b. Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;
> >
> > c. Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. ***The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions)***:

a. ***All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and***

b. ***Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting***.

69. The statements made by Defendants in ¶¶ 60-68 were false and/or misleading statements and/or failed to disclose: (a) that there was no reasonable basis for Synacor to assume that it would generate similar revenues of approximately $100 million from its agreement with AT&T as Yahoo did with its agreement with AT&T; (b) that there was no reasonable basis for Synacor to assume that it would generate $300 million in annual revenue by 2019; (c) that Synacor was unlikely to receive significant revenues from its contract with AT&T until 2018; (d) as such, the Company's revenue forecasts issued during the Class Period were materially false and misleading; and (e) Synacor's internal control over financial reporting was materially deficient causing the Company to be incapable of producing accurate financial statements.

70. To the extent that any of the statements in ¶¶ 60-68 is identified as forward-looking, the statement was not accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.

**During the Third Quarter of 2016 (July 1, 2016-September 30, 2016)**

71. On August 3, 2016, Synacor issued a press release, attached as Exhibit 99.1 to Form 8-K filed with the SEC, entitled "Synacor Delivers 23% Revenue Growth, Advances on Path to '3/30/300,'" announcing the Company's financial results for the quarter ended June 30, 2016. The press release stated in relevant part (emphasis added):

> "We delivered another strong quarter for Synacor with significant year-over-year revenue growth and adjusted EBITDA that exceeded our previously announced guidance," said Synacor CEO Himesh Bhise. "We are pleased with our progress in preparing to support our AT&T business and are advancing in line with our plans for deployment over 2017."
>
> "We remain confident in the foundation that we have laid for future growth. ***Our continued trajectory toward $300 million in revenue in three years is reflected in the demonstrated progress we are making against our 2016 strategic objectives***," Bhise concluded.

72. During the 2016 second quarter earnings conference call on August 4, 2016, Defendant Bhise stated (emphasis added): "***We are advancing in-line with our plans for AT&T deployment through 2017 with expected revenue of $100 million per year after full deployment." "We are targeting annual revenue of $300 million with adjusted EBITDA of $30 million in three years that is in 2019."***

73. On August 15, 2016, Synacor filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "2Q 2016 10-Q"). For the quarter, Synacor reported a net loss of $2.76 million, or $0.09 per diluted share, on revenue of $30.48 million, compared to a net loss of $1.08 million, or $0.04 per diluted share, on revenue of $24.72 million for the same period in the prior year.

74. The 2Q 2016 10-Q contained certifications pursuant to Section 302 of SOX signed by the Individual Defendants. The statements therein were the same statements as set forth in ¶ 68 herein.

75. The statements made by Defendants in ¶¶ 71-74 were false and/or misleading statements and/or failed to disclose: (a) that there was no reasonable basis for Synacor to assume that it would generate similar revenues of approximately $100 million from its agreement with AT&T as Yahoo did with its agreement with AT&T; (b) that there was no reasonable basis for Synacor to assume that it would generate $300 million in annual revenue by 2019; (c) that Synacor was unlikely to receive significant revenues from its contract with AT&T until 2018; (d) as such, the Company's revenue forecasts issued during the Class Period were materially false and misleading; and (e) Synacor's internal control over financial reporting was materially deficient causing the Company to be incapable of producing accurate financial statements.

76. To the extent that any of the statements in ¶¶ 71-74 is identified as forward-looking, the statement was not accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.

**During the Fourth Quarter of 2016 (October 1, 2016-December 31, 2016)**

77. On November 14, 2016, Synacor issued a press release, attached as Exhibit 99.1 to Form 8-K filed with the SEC, entitled "Synacor Exceeds Guidance, Delivers 20% Revenue Growth in Third Quarter 2016 ***as Path to '3/30/300' Remains on Track***," announcing the Company's financial results for the quarter ended September 30, 2016 (emphasis added). The press release stated in relevant part (emphasis added):

> "We delivered another solid quarter, exceeding our guidance and achieving double-digit top-line growth, margin expansion and growth in recurring and fee-based revenue," said Synacor CEO Himesh Bhise. "We are making great strides in advancing our technology and products, in particular this quarter, with our AT&T partnership, Zimbra Open Source and Cloud ID offerings.
>
> "We remain well positioned in the growing digital markets that we serve and ***are on track to deliver on our target of $300 million in revenue and $30 million in adjusted EBITDA in 2019***," said Bhise.

78. During the 2016 third quarter earnings conference call on November 14, 2016, Defendant Bhise stated (emphasis added):

> [The] [j]oint AT&T and Synacor team has been working hard on building the new AT&T multiplatform portal … [enabled with the ability to] monetize through search and advertising.
>
> The joint team has also been crafting the launch and deployment plan. We are planning the launch of the AT&T desktop and mobile web portal in the first half of 2017 and deployment will ramp and be completed through 2017 as previously discussed. Our initial estimate at contract signing was a limited Q4 2016 release given the size and expanded scope of this project and after our recent joint planning we've pushed back the official launch date.
>
> Revenue contribution from AT&T will begin in 2017 and we are adjusting our financial guidance for Q4 2016 accordingly. ***Our overall financial expectations for our contract with AT&T remained very much on track with expected full-year revenue of $100 million after deployment is complete.***

79. On November 14, 2016, Synacor filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "3Q 2016 10-Q"). For the quarter, Synacor reported a net loss of $3.37 million, or $0.11 per diluted share, on revenue of $31.72 million, compared to a net loss of $930,000, or $0.03 per diluted share, on revenue of $26.35 million for the same period in the prior year.

80. The 3Q 2016 10-Q contained certifications pursuant to Section 302 of SOX signed by the Individual Defendants. The statements therein were the same statements as set forth in ¶ 68 herein.

81. The statements made by Defendants in ¶¶ 77-80 were false and/or misleading statements and/or failed to disclose: (a) that there was no reasonable basis for Synacor to assume that it would generate similar revenues of approximately $100 million from its agreement with AT&T as Yahoo did with its agreement with AT&T; (b) that there was no reasonable basis for Synacor to assume that it would generate $300 million in annual revenue by 2019; (c) that

Synacor was unlikely to receive significant revenues from its contract with AT&T until 2018; (d) as such, the Company's revenue forecasts issued during the Class Period were materially false and misleading; and (e) Synacor's internal control over financial reporting was materially deficient causing the Company to be incapable of producing accurate financial statements.

82. To the extent that any of the statements in ¶¶ 77-80 is identified as forward-looking, the statement was not accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.

**During the First Quarter of 2017 (January 1, 2017-March 31, 2017)**

83. On March 15, 2017, Synacor issued a press release, attached as Exhibit 99.1 to Form 8-K filed with the SEC, entitled "Synacor Reports 16% Revenue Growth for 2016 and Announces Guidance of About 30% Growth for 2017," announcing the Company's financial results for the quarter and year ended December 31, 2016. The press release stated in relevant part (emphasis added):

> "We are seeing strong market validation of Synacor's portal, email, advertising and video products," said Synacor CEO Himesh Bhise. "We continue to make excellent progress toward the launch and deployment of the AT&T portal, and we announced several new customer wins in email and video.
>
> "We begin 2017 a stronger Synacor, well positioned in attractive and growing digital markets. ***We expect accelerated revenue growth of about 30% this year, as we continue to progress on our Path to 3/30/300***."
>
> Recent Highlights
>
> - Made excellent progress on plan to launch the new AT&T desktop and mobile web portal in the first half of 2017, and deployment will be completed through 2017.

***

> **Guidance**
>
> Based on information available as of March 15, 2017, Synacor is providing financial guidance for fiscal 2017 and the first quarter of fiscal 2017 as follows:
>
> - ***Fiscal 2017 Guidance***: ***Revenue for the full year of 2017 is projected to grow 26% to 33% to be in the range of $160.0 million to $170.0 million.*** Synacor expects to report a net loss in the range of $2.8 million to $8.0 million and adjusted EBITDA in the range of $6.0 million to $10.0 million, which excludes stock-based compensation expense of $2.8 million to $3.2 million, depreciation and amortization of $8.8 million to $9.6 million, and tax, interest expense and other income and expense of $1.2 million.
>
> - ***Q1 2017 Guidance***: Revenue for the first quarter of 2017 is projected to be in the range of $26.0 million to $28.0 million. Synacor expects to report a net loss of $6.2 million to $7.5 million and adjusted EBITDA of $(3.0) million to $(4.0) million, which excludes stock-based compensation expense of $0.7 million to $0.8 million, depreciation and amortization of $2.2 million to $2.4 million and tax, interest expense and other income and expense of $0.3 million.
>
> Net Income and adjusted EBITDA guidance for the first quarter and fiscal year 2017 reflect a portion of the $10 million investment planned from the second quarter of 2016 through the first quarter of 2017 to deploy portal services for AT&T.

84. During the 2016 fourth quarter earnings conference call held on March 15, 2017, a few months shy of the one-year anniversary of the signing of the AT&T contract, Defendant Stuart stated (emphasis added): ***"I want to reiterate that our overall financial expectations for our contract with AT&T remain on track with expected revenue of $100 million per year after full deployment."***

85. During that same earnings conference call, Defendant Bhise also stated that all was well. He stated: "We continue to make excellent progress with the ATT.net transition…. Synacor is now poised to deliver accelerated revenue growth in 2017 and beyond…. We remain on track to launch the new AT&T desktop and mobile web portal in the first half of this year and deployment will be completed through 2017." When asked by an analyst if he could provide

more granularity as to how the Company gets to $300 million in revenue in 2019, Bhise replied: ***"[W]ith the 30% growth rate next year we're looking at roughly 30% to 35% annual growth rate in the following two years to get to our $300 million revenue target****…. **Starting in 2018, we'll see the full benefit of the AT&T portal revenue***. And as you know, we're only going to see a piece of that in 2017 and that's exciting."

86. On March 22, 2017, Synacor filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2016 (the "2016 10-K"). For fiscal year 2016, Synacor reported a net loss of $10.74 million, or $0.36 per diluted share, on revenue of $127.37 million, compared to a net loss of $3.47 million, or $0.12 per diluted share, on revenue of $110.25 million for fiscal year 2015.

87. The 2016 10-K contained certifications pursuant to Section 302 of SOX signed by the Individual Defendants. The statements therein were the same statements as set forth in ¶ 68 herein.

88. The statements made by Defendants in ¶¶ 83-87 were false and/or misleading statements and/or failed to disclose: (a) that there was no reasonable basis for Synacor to assume that it would generate similar revenues of approximately $100 million from its agreement with AT&T as Yahoo did with its agreement with AT&T; (b) that there was no reasonable basis for Synacor to assume that it would generate $300 million in annual revenue by 2019; (c) that Defendant Bhise had no idea as to when the Company will see the full benefit of the AT&T portal revenue; (d) as such, the Company's revenue forecasts issued during the Class Period were materially false and misleading; and (e) Synacor's internal control over financial reporting was materially deficient causing the Company to be incapable of producing accurate financial statements.

89. To the extent that any of the statements in ¶¶ 83-87 is identified as forward-looking, the statement was not accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.

**During the Second Quarter of 2017 (April 1, 2017-June 30, 2017)**

90. On May 10, 2017, Synacor issued a press release, attached as Exhibit 99.1 to Form 8-K filed with the SEC, entitled "Synacor Delivers on First-Quarter 2017 Financial Guidance; Achieves Milestones on Path to 3/30/300," announcing the Company's financial results for the first quarter ended March 31, 2017. The press release stated in relevant part (emphasis added):

> "We continue to see strong customer affirmation of Synacor platforms, as we renew and expand key current relationships and win new customers. And I'm pleased to announce that the new ATT.net portal is live and the phased rollout is well underway," said Synacor CEO Himesh Bhise.
>
> "In April, we strengthened our balance sheet with $20 million in capital from an equity offering in order to execute on our strong growth pipeline. ***We remain well positioned to deliver on our target of $300 million in revenue and $30 million in adjusted EBITDA in 2019," said Bhise***.
>
> ***
>
> Based on information available as of May 10, 2017, the Company is providing financial guidance for the second quarter and fiscal 2017 as follows:
>
> - ***Q2 2017 Guidance:*** Revenue for the second quarter of 2017 is projected to be in the range of $28.0 million to $30.0 million. The Company expects to report a net loss of $3.2 million to $5.0 million and adjusted EBITDA of ($1.5) million to $0.0 million, which excludes stock-based compensation expense of $0.7 million to $0.8 million, depreciation and amortization expense of $2.2 million to $2.4 million and tax, interest expense and other income and expense of approximately $0.3 million.
>
> - ***Fiscal 2017 Guidance***: ***As announced earlier, revenue for the full year of 2017 is projected to be in the range of $160.0 million to $170.0 million***. The Company expects to report a net loss in the range of $2.8 million to $8.0 million and adjusted EBITDA in the range of $6.0 million

> to $10.0 million, which excludes stock-based compensation expense of $2.8 million to $3.2 million, depreciation and amortization expense of $8.8 million to $9.6 million, and tax, interest expense and other income and expense of $1.2 million.

91. On May 15, 2017, Synacor filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "1Q 2017 10-Q"). For the quarter, Synacor reported a net loss of $6.66 million, or $0.21 per diluted share, on revenue of $26.54 million, compared to a net loss of $1.57 million, or $0.05 per diluted share, on revenue of $30.26 million for the same period in the prior year.

92. In the 1Q 2017 10-Q, the Company stated in relevant part (emphasis added):

> ***We anticipate that both search and digital advertising activity and revenue will increase substantially in future quarters due to our three-year portal services contract with AT&T Services, Inc., or AT&T, to provide Managed Portals and Advertising solutions for use by AT&T's consumers.*** We entered into the portal services contract with AT&T in May 2016 and we expect to complete deploying our solutions in mid-2017. In addition, we expect a future increase of search activity on smartphones and tablets as we believe our continuing investment in our next-generation Managed Portals and Advertising experiences will allow us to compete more effectively for search activity on smartphones and tablets.

93. The 1Q 2017 10-Q contained certifications pursuant to Section 302 of SOX signed by the Individual Defendants. The statements therein were the same statements as set forth in ¶ 68 herein.

94. The statements made by Defendants in ¶¶ 90-93 were false and/or misleading statements and/or failed to disclose: (a) that there was no reasonable basis for Synacor to assume that it would generate similar revenues of approximately $100 million from its agreement with AT&T as Yahoo did with its agreement with AT&T; (b) that there was no reasonable basis for Synacor to assume that it would generate $300 million in annual revenue by 2019; (c) as such, the Company's revenue forecasts issued during the Class Period were materially false and

misleading; and (d) Synacor's internal control over financial reporting was materially deficient causing the Company to be incapable of producing accurate financial statements.

95. To the extent that any of the statements in ¶¶ 90-93 is identified as forward-looking, the statement was not accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.

**During the Third Quarter of 2017 (July 1, 2017-September 30, 2017)**

96. On August 14, 2017, Synacor filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "2Q 2017 10-Q"). For the quarter, Synacor reported a net loss of $3.28 million, or $0.09 per diluted share, on revenue of $31.22 million, compared to a net loss of $2.76 million, or $0.09 per diluted share, on revenue of $30.48 million for the same period in the prior year.

97. The 2Q 2017 10-Q contained certifications pursuant to Section 302 of SOX signed by the Individual Defendants. The statements therein were the same statements as set forth in ¶ 68 herein.

98. The statements made by Defendants in ¶¶ 96-97 were false and/or misleading statements and/or failed to disclose that Synacor's internal control over financial reporting was materially deficient causing the Company to be incapable of producing accurate financial statements.

**During the Fourth Quarter of 2017 (October 1, 2017-December 31, 2017)**

99. On November 14, 2017, Synacor filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "3Q 2017 10-Q"). For the quarter, Synacor reported a net income of $0.26 million,

or $0.01 per diluted share, on revenue of $36.27 million, compared to a net loss of $3.37 million, or $0.11 per diluted share, on revenue of $31.72 million for the same period in the prior year.

100. The 3Q 2017 10-Q contained certifications pursuant to Section 302 of SOX signed by the Individual Defendants. The statements therein were the same statements as set forth in ¶ 68 herein.

101. The statements made by Defendants in ¶¶ 99-100 were false and/or misleading statements and/or failed to disclose that Synacor's internal control over financial reporting was materially deficient causing the Company to be incapable of producing accurate financial statements.

**The Truth Begins to Emerge**

102. During the 2017 second quarter earnings conference call held on August 9, 2017, Defendant Bhise stated (emphasis added):

> The AT&T portal product implementation, rollout and migration have been completed as planned….
>
> ***At this time, the joint AT&T Synacor team has decided to prioritize engagement over monetization and so we now anticipate that much of the ramp up in revenue that we were expecting in the second half of '17 would get delayed to 2018. The AT&T and Synacor joint team made the strategic decision to prioritize engagement right now over monetization*** and we are seeing the results of this focus in deeper engagement metrics.
>
> We are already generating revenue from this new consumer experience, but we expect that additional monetization tactics will be turned on at a more deliberate pace, which will result in a longer ramp to full monetization. ***As a result, a significant portion of the revenue that we were expecting in Q3 and Q4 this year is delayed to 2018.***
>
> ***
>
> ***Given the focus on engagement and the delay on full monetization in the AT&T portal to 2018, we are revising our 2017 financial guidance. For the quarter, we expect revenue within the range of $35 million to $40 million….***
>
> ***We expect revenue for the full year 2017 to be in the range of $140 million to $150 million….***

***

> So most importantly, I'd like you to take away that given the product success at AT&T and given our strong pipeline of revenue opportunities, we remain committed to and we anticipate delivering on our 3/30/300 plan $300 million of revenue and 30 million of adjusted EBITDA in 2019.

***

> We are monetizing today…. [W]e're generating revenue for the portal today. It is fully deployed…. It's really a question of preference…. [T]he thought is that [AT&T] would like to prioritize and we would like to prioritize engagement, make sure that users are committed and interested in engaging with the site. And in that regard, the team decided to take a longer term view of what was right for each of our businesses and for the end user rather than maximizing and optimizing the opportunity this month and next month and next quarter….

***

> We are committed to the AT&T partnership…. The teams work well and closely together. For AT&T as we do for all of our customers we aspire to be a trusted partner and when a customer of ours has a business priority we do our best with shareholder interests in mind to support them….

103. On August 9, 2017, post-market, Synacor issued a press release, attached as Exhibit 99.1 to Form 8-K filed with the SEC, entitled "Synacor Exceeds Second-Quarter 2017 Financial Guidance; Remains on Path to '3/30/300,'" announcing its financial results for the quarter ended June 30, 2017. The press release stated in relevant part (emphasis added):

> ***"The joint AT&T-Synacor team has made the strategic decision to prioritize portal engagement right now over monetization***. We are seeing the results of this focus in deeper engagement metrics. We are already generating revenue from this new consumer experience, but ***we expect that additional monetization tactics will be turned on at a more deliberate pace, which will result in a longer ramp to full monetization. As a result, a significant portion of the revenue that we were expecting in Q3 and Q4 this year is delayed to 2018, and we are adjusting our financial guidance for 2017 accordingly***. We believe that this engagement-focused strategy ultimately leads to a stronger, more sustainable business," concluded Bhise.
>
> Based on information available as of August 9, 2017, the Company is providing financial guidance for the third quarter and fiscal 2017 as follows:

- ***Q3 2017 Guidance***: Revenue for the third quarter of 2017 is projected to be in the range of $35.0 million to $40.0 million. The Company expects to report a net loss of $0.7 million to $3.0 million and adjusted EBITDA of $0.5 million to $2.5 million, which excludes stock-based compensation expense of $0.7 million to $0.8 million, depreciation and amortization of $2.2 million to $2.4 million and tax, interest expense and other income and expense of $0.3 million.

- ***Fiscal 2017 Guidance***: ***Revenue for the full year of 2017 is projected to be in the range of $140 million to $150 million, adjusted from the previous range of $160 million to $170 million.*** The Company expects to report a net loss in the range of $9.3 million to $13.9 million, from the previous range of a net loss of $2.8 million to $8.0 million and adjusted EBITDA in the range of $0.0 million to $4.0 million, from the previous range of $6.0 million to $10.0 million, which excludes stock-based compensation expense of $2.7 million to $2.9 million, depreciation and amortization of $8.8 million to $9.2 million, and tax, interest expense, capitalized software impairment, and other income and expense of $1.8 million. Net income and adjusted EBITDA guidance include customer-driven product development investment in advance of revenue.

104. On this news in ¶¶ 102-103, Synacor's share price fell $1.15, or 32.39%, to close at $2.40 on August 10, 2017.

105. On March 15, 2018, post-market, Synacor held a conference call with analysts and investors to discuss the Company's fourth-quarter earnings. During the call, Defendant Bhise discussed the shortcomings of the AT&T contract, stating in relevant part (emphasis added):

> "As such, my second key message is that our 2018 guidance reflects the assumption that AT&T continues to prioritize customer experience. The ATT.net portal continues to successfully engage millions of consumers every month. In addition, the Synacor and the AT&T team are also using our platform to launch over 35 microsites that have promoted AT&T services and driven traffic to ATT.net.
>
> But as we have discussed on prior calls, AT&T has chosen, at least for the near term, to prioritize consumer experience and engagement, and we are collaboratively working with them in achieving that goal.
>
> ***Given this focus, in the last three quarters of 2017, we generated approximately $25 million in revenue from AT&T. We are expecting that AT&T will continue***

> ***to focus on consumer experience, and as such, our 2018 guidance reflects the annualized 2017 run rate.***
>
> ***Clearly, this forecast is below the $100 million annual revenue target that AT&T and Synacor announced when we first discussed the portal contract and was a critical element of Synacor's $300 million 2019 target***.

106. The revenue forecast from the contract which had been valued to generate $100 million in annual revenue per year had been cut to less than half because AT&T decided to focus on bringing traffic through the portal, rather than generating revenue from it. And because the $100 million was a critical element of Synacor's $300 million revenue forecast for 2019, that forecast could no longer be relied upon as well.

107. Additionally, during the same conference call, Defendant Stuart disclosed material weaknesses in the Company's internal controls over financial reporting (emphasis added):

> As 2017 was our fifth full year as a public company, we were required for the first time to obtain an independent audit of our internal controls over financial reporting under Section 404 of Sarbanes-Oxley as of December 31, 2017. ***As a result of this audit, we will report in our Form 10-K three material weaknesses in our internal controls over financial reporting. We believe all three resulted from having initially assigned too few people with the necessary expertise to adequately document, implement and monitor controls.***

108. On this news set forth in ¶¶ 105, 107, Synacor's share price fell $0.30 or 14.63%, to close at $1.75 on March 16, 2018.

109. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

110. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired Synacor securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

111. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Synacor securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Synacor or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

112. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

113. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

114. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Synacor;

- whether the Individual Defendants caused Synacor to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Synacor securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

115. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

116. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Synacor securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiffs and members of the Class purchased, acquired and/or sold Synacor securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

117. Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

118. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

119. Plaintiffs repeats and realleges each and every allegation contained above as if fully set forth herein.

120. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

121. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to

defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Synacor securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Synacor securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

122. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Synacor securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Synacor's finances and business prospects.

123. By virtue of their positions at Synacor , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

124. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the director and senior officers of Synacor, the Individual Defendants had knowledge of the details of Synacor's internal affairs.

125. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Synacor. As director and senior officers of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Synacor's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Synacor securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Synacor's business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Synacor securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

126. During the Class Period, Synacor securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Synacor securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or

otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Synacor securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of Synacor securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

127. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

128. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

129. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

130. During the Class Period, the Individual Defendants participated in the operation and management of Synacor, and conducted and participated, directly and indirectly, in the conduct of Synacor's business affairs. Because of their senior positions, they knew the adverse non-public information about Synacor's misstatement of income and expenses and false financial statements.

131. As director and senior officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Synacor's financial condition and results of operations, and to correct promptly any public statements issued by Synacor which had become materially false or misleading.

132. Because of their positions of control and authority as director and senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Synacor disseminated in the marketplace during the Class Period concerning Synacor's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Synacor to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Synacor within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Synacor securities.

133. Each of the Individual Defendants, therefore, acted as a controlling person of Synacor. By reason of their senior management positions and/or being a director of Synacor, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Synacor to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Synacor and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

134. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Synacor.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated: July 27, 2018

Respectfully submitted,
**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Brenda Szydlo
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
bszydlo@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

***Lead Counsel for Plaintiffs and the proposed class***

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

***Additional Counsel for Plaintiffs and the proposed class***